UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| CARLOS RASHAD GOULD, § | | |
| No. 33934-177 § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | CIVIL ACTION NO. | |
| § | 7:11-CV-141-O-BL | |
| UNITED STATES OF AMERICA, § | | |
| § | | |
| § | | |
| Respondent. § | Referred to U.S. Magistrate Judge | |

**REPORT AND RECOMMENDATION**

Before the Court is Petitioner Carlos Rashad Gould's post-conviction challenge under 28 U.S.C. § 2255, filed November 7, 2011. (Doc. 1). Petitioner is currently being housed at the Federal Correctional Institution in El Reno, Oklahoma. For the reasons stated herein, the Court recommends that Petitioner's § 2255 motion be dismissed.

**I.**

Petitioner was a co-defendant in a seven-count indictment consisting of drug trafficking and firearm charges. *United States v. Gould*, 529 F.3d 274, 275 (5th Cir. 2008); (Doc. 1, p. 1); (Doc. 5, p. 2); (Doc. 16, p. 1). Petitioner pled guilty to violating 21 U.S.C. § 846 and 18 U.S.C. § 942(c), for conspiring to traffic 50 grams or more of cocaine base (Count 1), and possessing a firearm in furtherance of a drug trafficking crime (Count 3). *Gould*, 529 F.3d 274; (Doc. 1, p. 1); (Doc. 5, p. 2); (Doc. 16, p. 1). As a result, Petitioner was sentenced to a total of 270 months in a federal penitentiary. *Gould*, 529 F.3d 274; (Doc. 5, p. 2); (Doc. 16, p. 1). On his first direct appeal, the Fifth Circuit vacated Petitioner's sentence and remanded the case for resentencing. *Gould*, 529 F.3d at 275; (Doc. 1, p. 8); (Doc. 5, p. 3); (Doc. 16, p. 2). Petitioner was resentenced

to a total of 197 months in prison on August, 20, 2008. (Doc. 1, p. 8); (Doc. 5, p. 2); (Doc. 16, p. 2). This sentence was affirmed by the Fifth Circuit on July 29, 2009, and the Supreme Court on November 15, 2010. *United States v. Gould*, 329 Fed. App'x 569 (5th Cir. 2009); *Abbott v. United States*, 131 S. Ct. 18, 31 (2010); (Doc. 16, p. 2). Petitioner then filed this timely § 2255 motion.

## II.

On January 22, 2015, the Court granted Petitioner's motion to supplement his complaint and seek relief on an additional ground. (Doc. 32). After reviewing Petitioner's motion to vacate, the numerous attachments and briefs filed therewith, the Government's response, and Petitioner's reply, the Court finds that Petitioner seeks relief on four grounds:

1. Whether Petitioner's rights were violated "when his sentence was significantly increased" by facts not included in the plea bargain or decided upon by the jury, in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013);

2. Whether the Fair Sentencing Act of 2010 (FSA), and *Pepper v. United States*, 131 S. Ct. 1229 (2011), apply retroactively to Petitioner;

3. Whether Petitioner's counsel was ineffective for failing to argue that Petitioner was being held accountable for a quantity of drugs that was possessed by his co-conspirator before the conspiracy began; and

4. Whether Petitioner's counsel was ineffective for failing to file a motion to suppress certain evidence.

(Doc. 5); (Doc. 29).

In response, the Government asserts that Petitioner is "procedurally barred from raising his claim under *Pepper* because he failed to raise it at his resentencing and direct appeal," the

FSA does not apply retroactively, and that Petitioner cannot satisfy the *Strickland* test to show that his counsel was ineffective. (Doc. 16).

### III.

28 U.S.C. § 2255 allows a prisoner to move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted). When the conviction is a result of a guilty plea, a post-conviction challenge under § 2255 will only be successful "if: (1) the plea was not entered voluntarily or intelligently, . . . or (2) the [prisoner] establishes that he is actually innocent of the underlying crime." *United States v. Sanders*, 157 F.3d 302, 305 (5th Cir. 1998). "Relief under . . . § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

New points of error may only be raised on collateral attack upon a showing of both "cause for [the] procedural default and actual prejudice due to any such errors." *Placente*, 81 F.3d at 558; *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc); *Murray v. Carrier*, 477 U.S. 478, 493 (1986). "Even then, any new assertion of error is limited to 'issues of constitutional or jurisdictional magnitude.'" *United States v. Odiodio*, No. 3:03-cv-0896-D, 2005 WL 2990906 *5 (N.D. Tex. November 7, 2005) (quoting *Shaid*, 937 F.2d at 232). The cause and prejudice standard is "a significantly higher" threshold to meet than the plain-error standard

applied on direct appeal. *Shaid*, 937 F.2d at 232 (quoting *United States v. Frady*, 456 U.S. 152, 165-66 (1982)). This is "to ensure that final judgments command respect and that their binding effect does not last only until 'the next series of endless post[-]conviction collateral attacks.'" *Shaid*, 937 F.2d at 232 (quoting *Frady*, 456 U.S. at 165-66). The only exception to this demanding standard, is when "a movant can establish a fundamental miscarriage of justice, *i.e.*, that he . . . is actually innocent of the crime convicted." *Odiodio*, 2005 WL 2990906 at *5; *Shaid*, 937 F.2d at 232; *Carrier*, 477 U.S. at 496; *see Sawyer v. Whitley*, 505 U.S. 333, 339-40 (1992); *United States v. Sorrells*, 145 F.3d 744, 750 (5th Cir. 1998) ("'actually innocent' standard imposes a higher burden on [prisoners] than the 'prejudice' prong in the cause and prejudice standard"); *see Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

### IV.

#### A.

This Court allowed Petitioner to supplement his original motion, (Doc. 32), and add a claim alleging that his rights were violated "when his sentence was significantly increased" by facts not included in the plea bargain or decided upon by the jury, in violation of *Alleyne v. United States*, 133 S. Ct. 2151. (Doc. 29). Specifically, Petitioner asserts that he was held "accountable for additional unindicted, uncharged, unsubstantiated, uncorroborated 3000 grams of powder cocaine allegedly possessed by [Petitioner's] co-defendant, before the conspiracy of conviction began. . . ." (Doc. 29, p. 3). Petitioner concedes his objection was "foreclosed by case law precedent" at the time of sentencing, but argues that the 2013 Supreme Court holding in *Alleyne*, serves as intervening law that should apply to his case. (Doc. 29, p. 4).

Because it is well-settled that *Alleyne* does not apply retroactively, Petitioner cannot rely on its principles for relief, and as such, no relief is warranted. *In re Kemper*, 735 F.3d 211 (5th

Cir. 2013) ("the Supreme Court did not declare that *Alleyne* applies retroactively on collateral review"); *United States v. Olvera*, ___ F.3d___, 2015 WL 110149 (5th Cir. 2015) ("We reiterate that *Alleyne* does not apply retroactively."); *Hughes v. United States*, 770 F.3d 814, 817-19 (9th Cir. 2014); *In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014); *United States v. Reyes*, 755 F.3d 210, 212-13 (3d Cir. 2014); *United States v. Redd*, 735 F.3d 88, 91-92 (2d Cir. 2013) (per curiam); *United States v. Stewart*, 540 Fed. App'x 171, 172 n. 1 (4th Cir. 2013) (per curiam); *In re Payne*, 733 F.3d 1027, 1029-30 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *O'Neal-Sloane v. Warden*, 576 Fed. App'x 63 (3d Cir. 2014) ("*Alleyne* does not apply retroactively to cases on collateral review").

**B.**

Petitioner next contends that the Fair Sentencing Act of 2010 should be applied to his case because direct review by the Supreme Court was still pending when the FSA was enacted. (Doc. 1, 5, 29). Thus, Petitioner argues his conviction was not final, and the FSA should be applied as an "intervening change in law. . . [that] applies to all cases pending on direct review." (Doc. 29, p. 11).

In *United States v. Doggins*, the Fifth Circuit held that because the FSA did not explicitly state its intention to be applied retroactively, the Savings Statute, 1 U.S.C. § 109, prevents any retroactive application. 633 F.3d 379, 384 (5th Cir. 2011). Thereafter, the Supreme Court held in *United States v. Dorsey* that although the FSA does not explicitly allow retroactive application, "Congress intended the [FSA's] more lenient penalties to apply to offenders who committed crimes before August 3, 2010, but were *sentenced after* that date." 132 S. Ct. 2321, 2331 (2012) (emphasis added); *United States v. Kelley*, 716 F.3d 180, (5th Cir. 2013); *United States v. Barrow*, 557 Fed. App'x 362 (5th Cir. 2014); *United States v. Mason*, 519 Fed. App'x 257, 258

(5th Cir. 2013) ("the FSA is not retroactively applicable because [petitioner] was sentenced in 2002 before the FSA's effective date."); *United States v. Reed*, 490 Fed. App'x 633 (5th Cir. 2012). This narrow application does not make the FSA "retroactive" in a way that would allow for a reduction of a sentence imposed *prior* to its passage. *See Kelley*, 716 F.3d at 181. Indeed, the Fifth Circuit has declined to apply the FSA in cases where prisoners were resentenced after the passage of the FSA. *Kelley*, 713 F.3d at 181.

The FSA took effect on August 3, 2010. *Dorsey*, 132 S. Ct. 2321. The sentence now challenged on collateral attack was imposed on August 20, 2008. (Doc. 1, p. 8). The fact that Petitioner's direct appeal was pending in the Supreme Court is of no consequence. As such, Petitioner may not seek application of the FSA through this § 2255 motion.

## C.

Petitioner moves the Court to vacate the currently-imposed sentence and order a resentencing in light of *Pepper v. United States*, 562 U.S. 476, 131 S. Ct. 1229 (2011). (Doc. 1, p. 7); (Doc. 5). Petitioner argues that the district court denied a downward departure from the sentencing guidelines because it was precluded from considering post-sentencing rehabilitation on remand under 18 U.S.C. § 3472(g). (Doc. 5, p. 10); (Doc. 16, p. 10); (Doc. 29, p. 8). At the resentencing, Petitioner presented evidence of post-sentencing rehabilitation and requested a downward variance from the guidelines, proposing a 180-month term of imprisonment. (Doc. 19, p. 7); *see United States v. Gould*, No. 7:05-cr-020-O, Doc. 159, p. 38. This request was denied and Petitioner was sentenced to a total of 197 months' imprisonment. *United States v. Gould*, No. 7:05-cr-020-O, Doc. 159, p. 62.

Respondent maintains that Petitioner is procedurally barred from raising a claim under *Pepper* on collateral attack "because he failed to [challenge the constitutionality of § 3742(g)(2)]

at his resentencing and direct appeal, and he fail[ed] to show cause and actual prejudice to excuse his procedural default." (Doc. 16, p. 10-14). Respondent believes Petitioner should have challenged § 3742's constitutionality at the resentencing and on direct appeal because in *United States v. Mondragon-Santiago*, 564 F.3d 357, 369 n. 11 (5th Cir. 2009), "the Fifth Circuit left open the question of whether [*United States v.*] *Booker*, [543 U.S. 220 (2005)] invalidated section 3742(g)(2)." (Doc. 16, p. 11).

Prior to *Pepper*, district courts were "effectively precluded [by 18 U.S.C. § 3742(g)(2)]. . . from considering post[-]sentencing rehabilitation." *Pepper*, 131 S. Ct. at 1236. In *Pepper*, the Supreme Court invalidated § 3742(g)(2), and held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's post[-]sentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." 131 S. Ct. at 1236.

*Pepper* was decided in 2011, well after Petitioner's conviction was affirmed by the Supreme Court in 2010. The language in *Pepper* does not lend itself to collateral attack on sentences preceding its decision. *In re Elwood*, 408 F.3d 211 (5th Cir. 2011) (citing *Tyler v. Cain*, 533 U.S. 656, 663 (2001) ("a new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive. . . The Supreme Court is the only entity that can ma[k]e a new rule retroactive." (internal quotations and citations omitted))). *Pepper* merely dictates that upon *remand*, a court charged with resentencing a defendant *may* consider evidence of rehabilitation. *See United States v. Butler*, 446 Fed. App'x 147, 155 (6th Cir. 2011) ("*Pepper* establishes that district courts are not forbidden from considering post-sentencing conduct when

resentencing a defendant after the original sentence has been set aside on appeal, it nowhere holds that courts *must* consider post-sentence conduct." (emphasis in original)).

In the instant case, all relevant events (resentencing, affirmation by the Fifth Circuit and Supreme Court) took place prior to the Supreme Court's decision in *Pepper*. Nothing in *Pepper* allows a resentencing absent an appellate decision invalidating the imposed sentence. *See Pepper*, 562 U.S. 476; *United States v. Miller*, No. 3:94-cr-34301-G, 2014 WL 7174301 *4 (N.D. Tex. Dec. 15, 2014) ("Here, no remand for resentencing occurred and the Court's power to modify a previously imposed sentence is narrowly limited. Neither 18 U.S.C. 3572(c)(2) *nor any other provision* allows the Court to reopen an imposed sentence based on post-sentencing rehabilitation." (quoting *United States v. Moore*, 930 F. Supp.2d 141, 145 n.3 (D.D.C. 2013) (emphasis added))); *see United States v. Jones*, 515 Fed. App'x 783, 784 (10th Cir. 2013); *see also Snell v. United States*, No. 10-2072 (JAP), 2013 WL 4027465 *2-3 (D.N.J. Aug. 7, 2013) ("The *Pepper* decision does not create a right to resentencing solely on the basis of post-sentencing rehabilitation."). Moreover, it is well-settled that courts generally "may not modify a term of imprisonment once it has been imposed," unless the limited circumstances in 18 U.S.C. § 3582(c) apply. *Dillon v. United States*, 560 U.S. 817 (2010); *United States v. Zabala-Molina*, 400 Fed. App'x 872, 874 (5th Cir. 2010) (citing 18 U.S.C. § 3572(c)) ("District courts are authorized to modify previously-imposed sentences only in limited circumstances); *United States v. Meza*, 620 F.3d 505, 507 (5th Cir. 2010); *United States v. Courville*, 290 Fed. App'x 754, 756 (5th Cir. 2008); *United States v. Bridges*, 116 F.3d 1110, 1112 (5th Cir. 1997); *United States v. Guice*, No. 3:10-cr-183-B-(05), 2013 WL 2354282 *2-3 (N.D. Tex. May 29, 2013); *United States v. Martinez*, No. V:10-118-1, 2013 WL 3229667 (S.D. Tex. Jun. 24, 2013). Without

addressing Respondent's assertions of procedural bar, the Court finds that Petitioner has not shown that he is entitled to resentencing based solely on *Pepper* and his rehabilitative efforts.

**D.**

Petitioner makes two claims that his counsel was deficient. (Doc. 5); (Doc. 29). First, Petitioner claims that he was incorrectly held accountable for drug quantities outside his conspiracy. (Doc. 5); (Doc. 29). In Petitioner's opinion, counsel should have challenged the drug quantity in the presentence report (PSR). (Doc. 5); (Doc. 29). Second, Petitioner argues that counsel should have challenged the search warrant and the affidavit upon which it was based. (Doc. 5); (Doc. 29). Petitioner contends that the affidavit contained false information, and thus, the search warrant was not based on probable cause. (Doc. 5); (Doc. 29).

The Sixth Amendment of the United States Constitution guarantees a criminal defendant "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981). These claims may be raised for the first time in a § 2255 motion without showing cause and prejudice. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

In order to obtain habeas relief on a claim of ineffective assistance of counsel, the petitioner must prove (1) that his counsel's performance was deficient and (2) that it prejudiced the defendant. *Strickland*, 466 U.S. at 687. To dispose of an ineffective assistance claim, a federal habeas court need not address both prongs of the *Strickland* standard. *Strickland*, 466 U.S. at 700; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Failure to establish either requirement necessarily defeats the claim. *Strickland*, 466 U.S. at 697; *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990).

In measuring whether counsel's representation was deficient, a petitioner must show that the representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Porter v. McCollum*, 558 U.S. 30, 38 (2009). "It is well settled that effective assistance is not equivalent to errorless counsel or counsel judged ineffectively by hindsight." *Tijerina v. Estelle*, 692 F.2d 3, 7 (5th Cir. 1982). A court reviewing an ineffectiveness claim must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence or that, under the circumstances, the challenged action "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *Gray v. Lynn*, 6 F.3d 265, 268 (5th Cir. 1993); *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).

To satisfy the second prong of the *Strickland* test, the petitioner must show that counsel's errors were prejudicial to the outcome of the case. *Strickland*, 466 U.S. at 687. "To demonstrate prejudice in the context of a guilty plea, 'the [prisoner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Allen*, 250 Fed. App'x 9, 12 (5th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). It is not enough for a habeas petitioner to merely allege deficiencies on the part of counsel. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000). He must affirmatively plead the resulting prejudice in his habeas petition. *Hill v. Lockhart*, 474 U.S. 52, 59-61 (1985); *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).

A challenge to the effectiveness of counsel under 28 U.S.C. § 2255 does not automatically mandate a hearing. *Hughes*, 635 F.2d at 451; *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. An evidentiary hearing is not required as long as the "files and records of a case make manifest the lack of merit" of the petition. *Hughes*, 635 F.2d at 451.

a.

Petitioner contends that his trial attorney, Dean Sanders, should have challenged the drug quantity calculation in the PSR because the "3,022 grams of powder cocaine . . . attributed to him" were drugs possessed by his co-defendant before the conspiracy began. (Doc. 5, p. 5); (Doc. 29, p. 5). Petitioner argues that the "plea bargain and factual resume . . . states [*sic*] that his conspiracy only involved 92 grams of crack, and 22 grams of powder cocaine." (Doc. 5, p. 5); (Doc. 29, p. 5). Petitioner relies on a series of Fifth Circuit cases reversing convictions of defendants who were held accountable for drug quantities possessed before a conspiracy, to argue that Sanders faltered by "failing to cite and present directly controlling Fifth Circuit" precedent applicable to his case. (Doc. 5, p. 5); (Doc. 29, p. 5). Petitioner argues that he was unreasonably prejudiced by counsel's failure to challenge the discrepancy in the drug quantities. (Doc. 5, p. 6); (Doc. 29, p. 6).

Respondent states that Petitioner "misrepresents facts he stipulated to in his factual resume and his plea agreement. Nowhere in either document is there an agreement that his conspiracy *only involved* 92 grams of crack cocaine and 22 grams of powder cocaine. Rather, in his factual resume [Petitioner] agreed to the amount of drugs found *on him* and in the . . . home after the search and his arrest. Nothing indicates that would be the *complete universe of drugs attributable to him.*" (Doc. 16, p. 15) (internal citations omitted and emphasis added).

While Petitioner is correct that he cannot be held accountable for drug quantities possessed before the start of the conspiracy, a review of the record and the PSR, supports the contrary position. Specifically, Paragraph 27 of the PSR specifies that after waiving his *Miranda* rights, Petitioner admitted to purchasing "one-fourth kilogram of cocaine from a major supplier . . . on two occasions." (PSR ¶ 27). Petitioner then "stated that [his co-defendant] sold cocaine

base for the . . . major distributor and that [Petitioner] observed [his co-defendant] receive one-half kilogram of cocaine on five to six different occasions." (PSR ¶ 27). This information was used to obtain the 3,022 grams of powder cocaine that Petitioner contends he is being erroneously held accountable for. (PSR ¶ 27). Petitioner also stated that he obtained the residence "for himself and [his co-defendant] to sell cocaine base." (PSR ¶ 27). Petitioner admitted that he would routinely convert the powder cocaine into cocaine base and then sell the drugs. (PSR ¶ 27).

One thousand grams is equal to one kilogram. Thus, one-fourth of a kilogram is 250 grams, and one-half of a kilogram is 500 grams. Petitioner purchased 250 grams of powder cocaine twice, for a total of 500 grams. His co-defendant purchased 500 grams of powder cocaine on five occasions, for a total of 2,500 grams. Thus, the total amount of cocaine purchased during the conspiracy (2,500g + 500g) is 3,000 grams, or 3 kilograms.

The inquisition then turns to whether the quantity of powder cocaine Petitioner's co-defendant was in possession of can be and was properly attributed to Petitioner. Petitioner does not dispute that he was involved in a conspiracy. His only contention is that the disputed quantity was "possessed [by his co-defendant] before the conspiracy began." (Doc. 5, p. 5); (Doc. 29, p. 5).

United States Sentencing Guideline (U.S.S.G.) § 1B1.3(a)(1)(B)[1] holds a co-conspirator liable for "all reasonably foreseeable acts and omissions of others in furtherance of a jointly undertaken criminal activity, that occurred during the commission of the offense. . .[or] in preparation for that offense. . . ." U.S.S.G. § 2D1.1 is the applicable guideline for violations of 21 U.S.C. § 846. Section 2D1.1 assigns an offense level "determined by the quantity of drugs

---

[1] The November 1, 2007 guidelines were applied to Petitioner on resentencing. The Court uses the same guidelines under which Petitioner was sentenced in its evaluation. The November 1, 2007 guidelines can be found at http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2007/manual/GL2007.pdf.

involved in the offense." *United States v. Carreon*, 11 F.3d 1225, 1230 (5th Cir. 1994). The "quantity includes both drugs with which the defendant was directly involved and drugs that can be attributed to the defendant in a conspiracy as part of his 'relevant' conduct under [U.S.S.G.] § 1B1.3(a)(1)(B)." *Id.* at 1230. Relevant conduct "must be both 'reasonably foreseeable' to the defendant and within the scope of the defendant's agreement." *Carreon*, 11 F.3d at 1230; *United States v. Evbouman*, 992 F.2d 70, 72 (5th Cir. 1993). However, a defendant may not be held accountable for "conduct occurring before the defendant joined the conspiracy." *United States v. Madkins*, 14 F.3d 277, 279, n. 10 (5th Cir. 1994) ("The relevant inquiry is to determine the foreseeable object to which the individual conspirator agreed. Earlier transactions of a conspiracy before a conspirator joins may, in certain settings, be relevant." (citing *United States v. O'Campo*, 973 F.2d 1015 (1st Cir. 1992))); *Carreon*, 11 F.3d 1225.

Petitioner's admissions in Paragraph 27 of the PSR do not suggest that the cocaine quantity he now contests were possessed by his co-defendant before the conspiracy began. Nor does the record suggest, as does Petitioner, that the conspiracy began and ended on May 9, 2005.[2] Indeed the charging indictment states that Petitioner engaged in the unlawful conspiracy "*on or about* May 9, 2005." *United States v. Gould*, No. 7-05-cr-20-O-2, Doc. 1, p. 1. The plea agreement does not specify any date for the conspiracy or the exact quantity of substance being attributed to Petitioner. *See United States v. Gould*, No. 7-05-cr-20-O-2, Doc. 67. Although the factual resume indicates the drug quantities seized "from [Petitioner's] person" after arrest, it nowhere indicates that the quantities reported therein were the *only* quantities Petitioner would be accountable for. (*See* Doc. 30, p. 19-24). Furthermore, it cannot be said that the quantity

---

[2] "Counsles [*sic*] for Gould should have realized that Goulds [*sic*] Indictment for conspiracy states that the offense began and ended on the same date (May 9, 2005), as well as Goulds [*sic*] Plea-Bargain and Factual Resume state the same information." (Doc. 5, p. 5); (Doc. 29, p. 5).

Petitioner now contests was not "foreseeable" to Petitioner or was "outside the scope" of his agreement to participate in the conspiracy.

Petitioner cannot show that a failure to object to the drug quantities fell below an objective standard of reasonableness. Based on these considerations, Petitioner fails to satisfy *Strickland's* rigorous test.[3]

**b.**

Petitioner contends that Sanders should have challenged the search warrant because he believes that the warrant was based on and contained erroneous information. (Doc. 5, p. 19); (Doc. 29, p. 19). Petitioner also states that Sanders should have argued that the warrant was "bare bones" and lacked probable cause. (Doc. 5, p. 19-27); (Doc. 29, p. 19-27).

Although Petitioner pleads that he was prejudiced, he fails to plead that "'he would not have pleaded guilty and would have insisted on going to trial.'" *United States v. Allen*, 250 Fed. App'x 9, 12 (5th Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)); (Doc. 29, p. 24) ("This deficiency clearly prejudiced Gould, as he was convicted of the very same evidence that he sought to have seized [*sic*]. Without this evidence Gould could not have been convicted.").

Moreover, Petitioner's assertion that Sanders withdrew the motion to suppress one month after it was filed, (Doc. 5, p. 20); (Doc. 29, p. 20), is incorrect. The docket sheet reflects that Sanders filed a motion to suppress on November 22, 2005. *See United States v. Gould*, No. 7-05-cr-20-O-2, Doc. 28. However, there is no record of any filing withdrawing this motion. *See United States v. Gould*, No. 7-05-cr-20-O-2, Docket Sheet. The only motion to withdraw was a motion withdrawing a motion for mental examination, filed on December 07, 2005. *United*

---

[3] To dispose of an ineffective assistance claim, a federal habeas court need not address both prongs of the *Strickland* standard. *Strickland*, 466 U.S. at 700; *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Failure to establish either requirement necessarily defeats the claim. *Strickland*, 466 U.S. at 697; *Smith v. Puckett*, 907 F.2d 581, 584 (5th Cir. 1990).

*States v. Gould*, No. 7-05-cr-20-O-2, Doc. 36. This filing is of no consequence to the instant § 2255 motion.

Again, Petitioner fails to meet the stringent requirements in *Strickland* to show that his counsel was deficient. As such, his ineffective assistance of counsel claims lack merit and warrant dismissal.

## V.

For the foregoing reasons, it is the recommendation of this Court that the Motion to Vacate or Correct Illegal Sentence, brought under 28 U.S.C. § 2255, be **DISMISSED**. The Court also recommends that any pending motions or relief not expressly granted be **DENIED.**

**IT IS, THEREFORE ORDERED** that this case is **TRANSFERRED** back to the docket of the United States district judge.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within **14 days** after being served with a copy.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.

**SO ORDERED.**

Dated this 5th day of February, 2015.

_____
**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**